## BANK OF ELBERTON v. SWIFT (two cases).

(Circuit Court of Appeals, Fifth Circuit.   October 29, 1920.)

### Nos. 3495, 3498.

**1. Bankruptcy ☞51—That voluntary petition was filed to protect expectancy does not warrant setting aside adjudication.**

Under Bankruptcy Act, § 59a (Comp. St. § 9643), permitting any qualified person to file a petition for voluntary bankruptcy, and section 14 (section 9598), entitling him to discharge, except for acts therein set forth, the fact that a voluntary bankrupt, who had practically no assets, filed his petition to protect from his creditors a legacy he expected to receive shortly from his mother, does not warrant setting aside his adjudication as a bankrupt, since the purpose of the Bankruptcy Act was to protect after-acquired property from creditors, and the fact that he had some special property in view does not change his rights.

**2. Bankruptcy ☞143(9), 148—Expectancy does not pass to trustee.**

Since only vested interests are considered property within the meaning of the Bankruptcy Act, and after-acquired property is not subject to the bankrupt's debts, the property which he expects or hopes to acquire thereafter by will or descent is not affected.

**3. Bankruptcy ☞455—Dismissal of petition to set aside adjudication not appealable.**

An order of the District Court dismissing a creditor's petition to set aside for fraud the adjudication of voluntary bankruptcy is not one that can be reviewed on appeal, under Bankruptcy Act, § 25a (Comp. St. § 9609).

Appeal and Petition to Superintend and Revise from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Voluntary proceeding in bankruptcy by John K. Swift. The petition of the Bank of Elberton to set aside the adjudication on the ground of fraud was denied (259 Fed. 612), and petitioner appeals and files petition to superintend and revise. Appeal dismissed, and petition to superintend and revise denied.

Stephen C. Upson and Horace M. Holden, both of Athens, Ga., for appellant and petitioner.

Daniel MacDougald, of Atlanta, Ga., and Samuel L. Olive, of Augusta, Ga., for appellee and respondent.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge.   November 8, 1917, John K. Swift was adjudged a bankrupt on his voluntary petition. June 6, 1918, the Bank of Elberton filed a petition to set aside the adjudication, on the ground of fraud. The fraud charged was that the bankrupt was using the Bankruptcy Act to defeat the collection of his note for $4,300, which the bank held against him. The bank's petition alleged that the note was

dated April 16, 1917, and due December 1, 1917; that at the time the bankrupt filed his petition his mother was 98 years old 'and at the point of death, and that she actually died shortly thereafter; that the bankrupt knew at the time of filing his petition in bankruptcy that by his mother's will he would be left a legacy of about $20,000; that he knew the will could never be changed, because, after his mother had made it, a guardian of her property had been appointed by the ordinary's court, on the ground of her imbecility from old age; that the bankrupt's debts, other than to the bank, were insignificant; and that according to his schedule of assets the only property he had was a watch and wearing apparel worth less than $100.

The District Court dismissed the bank's petition, and it has appealed and filed petition to superintend and revise.

[1] After the most careful consideration we concur in the conclusion reached by the venerable and lamented District Judge. Section 59a of the Bankruptcy Act provides that "any qualified person may file a petition to be adjudged a voluntary bankrupt." Comp. St. § 9643. Section 70a vests the trustee "with the title of the bankrupt * * * to all * * * property which, prior to the filing of the petition, he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Comp. St. § 9654. The amendment of 1910 (Comp. St. § 9631) further vests the trustee "with all the rights, remedies and powers" of a creditor holding a legal or equitable lien upon property within the custody of the bankruptcy court, and of a judgment creditor holding an unsatisfied execution as to property not within such custody. The bankrupt is entitled to be discharged, except for acts specifically set forth in section 14 and not material to this case, and the discharge operates to release him from his debts as of the date of the filing of his petition.

The act necessarily contemplates: (1) That a voluntary petitioner will be discharged from the burden of his debts; and (2) that all the property owned by him at the time he filed his petition will be distributed among his creditors. The discharge of the bankrupt does not affect the rights of the creditors to property which passes into the hands of the trustee. To insure distribution of all the bankrupt's property the trustee is given the power to assert, not only any right which the debtor could have asserted, but also any right, remedy, or power of a creditor holding a lien or unsatisfied execution. The statute, as already pointed out, specifically sets forth the grounds of objection to a discharge. But nowhere is it declared to be a ground of objection that after-acquired property would be unaffected by the claims of creditors. On the contrary, one of the main purposes of the act is to relieve after-acquired property from such claims.

In Hanover National Bank v. Moyses, 186 U. S. 181, text 191, 22 Sup. Ct. 857, 861 (46 L. Ed. 1113) Chief Justice Fuller quoted with approval the following language from In re Fowler, 1 Lowell, 161, Fed. Cas. No. 4,997:

"He [the bankrupt] may be, in fact, fraudulent, and able and unwilling to pay his debts; but the law takes him at his word, and makes effectual

provision, not only by civil but even by criminal process to effectuate his alleged intent of giving up all his property"—

—and then added:

"Adjudication follows as matter of course, and brings the bankrupt's property into the custody of the court for distribution among all his creditors."

[2] Only vested interests are considered property within the meaning of the act. In re Elite (D. C.) 109 Fed. 625; In re Gardner (D. C.) 106 Fed. 670. Clearly, if property which the bankrupt actually acquires after the filing of his petition is not subject to his debts, property which he only hopes or expects to acquire cannot be reached by creditors.

The only cases relied upon by appellant are Zeitinger et al. v. Hargadine-McKittrick Dry-Goods Co., 244 Fed. 719, 157 C. C. A. 167, and In re Weidenfeld (D. C.) 257 Fed. 872. In the first-named case it appears that the board of directors of the defendant company were being sued by the stockholders in the state court, and that, after that court had announced that it would grant an accounting and appoint a receiver, the directors suddenly filed a voluntary petition to have the corporation adjudged a bankrupt. This petition was finally denied in the Circuit Court of Appeals. The contest there was between the stockholders and the directors, and not between debtor and creditors. Moreover, the debts claimed by the petition in bankruptcy to exist had theretofore been held by the state court not to be valid claims against the company. The whole purpose of that bankruptcy proceeding was to oust the jurisdiction of the state court.

In the Weidenfeld Case an involuntary petition had been resisted by the bankrupt until his wife died leaving him some property. He asked leave to withdraw his objection and to consent to be adjudged a bankrupt, in which event, of course, the property acquired from his wife would be relieved of his debts. But the petitioning creditors had theretofore asked leave to dismiss their petition against Weidenfeld and had given the required notice to the other creditors. There was no objection by the other creditors, and of course the court allowed the petitioning creditors to withdraw their petition, which was sufficient to end the case, although it denied the petition of the bankrupt suddenly to change his attitude.

It was practically admitted in the oral argument that there was no remedy within the letter of the act, but it was earnestly insisted that appellant's petition showed an attempt to violate its spirit and to use the process of the court to perpetrate a fraud. It was not denied that a party might take advantage of a voluntary proceeding in bankruptcy for the very purpose of having any property he might accumulate thereafter relieved from his debts, but it was said that there must be a line drawn between a general purpose of that kind and a specific intent, such as is alleged to exist here, where the acquisition of the property by appellee followed so closely in time upon the filing of his petition. To that argument it need only be replied that the law authorizes the petition to be filed and adjudication made, and a discharge granted. The act fixes the rights of the parties. It has carefully enumerated

the things that can be done and the things that cannot be done, and it is not for the courts to add to the one or to the other. Congress enacted the bankruptcy statute in the exercise of a public policy, for the benefit, not of debtors and creditors, but of society at large. It realized, of course, that unscrupulous and dishonest men would take advantage wherever they could of its provisions. Equally of course, it was not intended to enable a debtor to rush into bankruptcy just in time to prevent his creditors from satisfying their claims out of property he was about to come into possession of. But the difficulty in any law upon so complicated a subject as business relations is to make it cover every particular case that may possibly arise. It does not seem to us that the act takes into account the motives of creditors in involuntary proceedings, or of debtors in voluntary proceedings; but instead of that, in view of the fact that such a practical subject as business relations between debtor and creditor is being dealt with, it concerns itself rather with conditions as they exist, and undertakes to fix definitely the obligations of the debtor and the rights and remedies of the creditor. In our judgment, it was thought best by Congress to prescribe general rules, which would usually promote satisfactory results, notwithstanding the fact that in isolated instances it would be difficult, if not impossible, to attain to the high standards of exact justice.

[3] The order of the District Court is not one that can be reviewed on appeal, under the provisions of section 25a of the Bankruptcy Act, and the appeal is therefore dismissed.

The petition to superintend and revise is denied.